UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSEMARY G. McLAUGHLIN, ALBERT A.
TARANTINO, TERENCE McCUE,  DOREEN E.
BERTONE, ROBERT R. LEBENSOLD, JACOB
VINCI, ROBERT W. HALL, JR., MICHELINA
WRIGHT, TIFFINAY NARDOZI, MICHELE
TARINTINO, MADELINE PELLIGRINO,
CHARLES McLAUGHLIN,

                           Plaintiffs,

             -against-

DOROTHY ALLEN, in her capacity as CITY CLERK
of the City of New Rochelle, CITY OF NEW
ROCHELLE, THE WESTCHESTER COUNTY
BOARD OF ELECTIONS,  Carolee Sunderland
and Reginald Lafayette, Commissioners Constituting
the Board, ROBERT LOPEZ, JOHN M. QUINLAN,
MICHAEL BROWN, MARGARET A. GODFREY,
candidates,

                       Defendants.
-----------------------------------------------------------------X

03 Civ. 9886 (CLB)

**NOTICE OF MOTION
BY DEFENDANTS
DOROTHY ALLEN
AND CITY OF
NEW ROCHELLE
<u>FOR SUMMARY JUDGMENT</u>**

<u>Filed Electronically</u>

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law in Support of

the Motion by Dorothy Allen, in her capacity as City Clerk of the City of New Rochelle   (the "City

Clerk") and the City of New Rochelle (the "City" or "New Rochelle") to Dismiss the Complaint, as

well as the affidavit of Alan D. Scheinkman, Esq., sworn to July 9, 2004, the affidavit of Dorothy

Allen, sworn to July 9, 2004, and the affidavit of Arnold I. Klugman, sworn to July 9, 2004,

together with the exhibits thereto,  the City Clerk and the City will move this Court before the

Honorable Charles L. Brieant, at the United States District Court, White Plains Courthouse, 300

Quarropas Street, White Plains, New York 10601, on the 30th day of July, 2004 at 9:00 in the

forenoon of that day, or as soon thereafter as counsel can be heard, for an Order pursuant to Rule

56 of the Federal Rules of Civil Procedure, granting the City Clerk and the City summary

judgment, dismissing all claims asserted against them herein, together with such other and further

relief as to the Court may seem just and proper.


Dated: White Plains, New York
      July 9, 2004

                                         DELBELLO DONNELLAN WEINGARTEN
                                                WISE & WIEDERKEHR, LLP
                                        Attorneys for Dorothy Allen and the City of New Rochelle


                                        BY: /S/_____
                                            Alan D. Scheinkman  (AS-9345)
                                        One North Lexington Avenue
                                        White Plains, New York  10601
                                        (914) 681-0200


TO:    JOHN CIAMPOLI, ESQ.
        Attorney for Plaintiffs
        99 Washington Avenue
        Suite 702
        Albany, New York 12210
        (518) 436-3865

        DAVID L. LEWIS, ESQ.
        Attorney for Plaintiffs
        LEWIS & FIORE
        225 Broadway
        Suite 3300
        New York, New York 10007
        (212) 285-2290

        CHARLENE M. INDELICATO, ESQ.
        County Attorney for the County of Westchester
            Attention: Matthew I. Gallagher, Esq.
        Attorney for the Westchester County Board of Elections
        148 Martine Avenue
        White Plains, New York 10601
        (914) 995-2660

ROBERT D. GOODSTEIN, ESQ.
GOODSTEIN & WEST
Attorneys for Defendants Roberto Lopez and John M. Quinlan
56 Harrison Street
New Rochelle, New York 10801
(914) 769-0100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSEMARY G. McLAUGHLIN, ALBERT A.                           03 Civ. 9886 (CLB)
TARANTINO, TERENCE McCUE,  DOREEN E.
BERTONE, ROBERT R. LEBENSOLD, JACOB
VINCI, ROBERT W. HALL, JR., MICHELINA
WRIGHT, TIFFINAY NARDOZI, MICHELE                           **AFFIDAVIT OF**
TARINTINO, MADELINE PELLIGRINO,                             **DOROTHY ALLEN**
CHARLES McLAUGHLIN,

                            Plaintiffs,

              -against-

DOROTHY ALLEN, in her capacity as CITY CLERK
of the City of New Rochelle, CITY OF NEW
ROCHELLE, THE WESTCHESTER COUNTY
BOARD OF ELECTIONS,  Carolee Sunderland
and Reginald Lafayette, Commissioners Constituting           Filed Electronically
the Board, ROBERT LOPEZ, JOHN M. QUINLAN,
MICHAEL BROWN, MARGARET A. GODFREY,
candidates,

                            Defendants.
-----------------------------------------------------------------X

STATE OF NEW YORK              )
                                ss.:
COUNTY OF WESTCHESTER   )

        DOROTHY ALLEN, being duly sworn, deposes and says:

        1.      I am the City Clerk of the City of New Rochelle and one of the defendants in the

above captioned action. I respectfully submit this affidavit in support of Defendants' motion for

summary judgment. I have personal knowledge of the facts set forth herein.

        2.      I have been the City Clerk of the City of New Rochelle since 1998.

        3.      The City Clerk has no responsibilities in connection with the adoption of

redistricting plans for the City Council, other than to serve as the City's records keeper and

prepare appropriate notices and records for Council meetings and actions.

1

4.      Maps of Council districts are prepared by the City's engineers.

5.      The City Clerk has defined responsibilities in the Election Law for assisting the administration of elections, including the distribution and collection of official election materials on election days.

6.      Since I became City Clerk, I have participated in the annual creation of a "Street Guide" showing which streets (and portions of streets, as reflected by street address numbers) are in which election districts. The Street Guide shows a listing of streets (or portions thereof) and the Election, State Senate, State Assembly, County Legislative, and Congressional Districts they are located in.

7.      When there have been changes in election districts in the City, I have also participated in updating the Street Guide and notifying the Westchester County Board of Elections of the changes in the City Street Guide so that the Board of Elections could change its records.

8.      2003 was a redistricting year for the City of New Rochelle. In addition, the City Council decided in 2003 to reduce the number of election districts as a means of saving money and providing sufficient numbers of operable voting machines. The voting machines used in the City are older machines and it can be difficult to obtain parts for them, leading to the practice of cannibalizing some machines in order to keep others operable.

9.      As the result of the 2003 redistricting and the reduced number of election districts, over 300 changes were made from the 2002 Street Guide to the 2003 Street Guide.

10.     In preparing the Street Guide, I obtained the information as to which portions of which streets are in which districts from Rashmikant Mehta, an engineer with the City's

2

Department of Public Works, who was primarily responsible for the preparation of the official maps.

11.     The redistricting plan which was to govern the 2003 election was adopted by the City Council on April 29, 2003. With the period for obtaining petition signatures commencing on June 3, 2003, and the time to file them set for between July 7 and 10, 2003, I tried to update the Street Guide expeditiously. It was made clear to me that the Board of Elections wanted me to report changes quickly so that it could get "walking lists" out to candidates for use in petition circulation.

12.     The Street Guide is kept on an "Excel" worksheet maintained by my assistant, Penelope Lozada. When changes are made, the worksheet is "saved" on the computer, with the result that the prior version is over-written.

13.     I sent the 2003 Street Guide, as it then existed, to the Board of Elections in May 2003, just weeks after the adoption of the redistricting plan. Thereafter, I was contacted by various people with questions about whether the assignment of particular locations to particular election districts was accurate. People who raised questions included Council Members Noam Bramson and Marianne Sussman, Arnold I. Klugman ("Klugman"), the Chair of the City Democratic Party, Douglas Colety ("Colety"), the Chair of the City Republican Party, and ordinary citizens.

14.     When a question was raised concerning the placement of a voter in an election district, no matter who raised the question, I would invariably contact Mr. Mehta, the engineer in the Department of Public Works, who, in turn, would check the map and report back to me on whether the placement was correct. If there was an error in the Street Guide, I would then have it

3

corrected on the Excel spreadsheet. However, that summer, we were experiencing problems with saving the spreadsheet on the computer.

15.     I never made any changes to any maps.  In verifying the accuracy of the placement of various street addresses in specific election districts, my only research was to have Mr. Mehta check the map. I did not know the names of the persons who resided at the addresses, much less their party affiliation or political viewpoints, except in one or two instances where I was given a specific name by the person who contacted me to propose a correction.

16.     From May 28, 2003 to September 4, 2003, I notified the County Board of Elections of the corrections I was making to the Street Guide by email. I prepared the emails and transmitted them to Stephanie Wedra, an employee of the Board of Elections. These emails are annexed Exhibit A to the accompanying Appendix to this motion.

17.     During the summer 2003, I had the Street Guide published in printed form and made available to the public (the "Primary Election Street Guide"). A copy of the 2003 Primary Election Street Guide is annexed hereto as Exhibit B to the accompanying Appendix to this motion.

18.     After the primary election was held on September 9, 2003, I happened to pick up a copy of the 2003 Primary Street Guide. In flipping through the document, I noticed that some changes that had not been made. I believed that, due to the difficulties in saving the Excel worksheet, changes had not been saved and portions of the document reverted to prior conditions.  However, because some changes had been saved and others had not been, I had difficulty ascertaining what had transpired.

19.     To try to remedy any problems, I obtained the  Board of Elections version of the directory (the Board was not having the same computer problem) and compared the Board's

4

records with my own. In doing so, I discovered that the Board of Elections had made its own errors.

20.    In particular, I noticed that my 2003 Primary Street Guide (see page 13) had odd numbers on Fourth Street ranging from 27 through 81 in Election District 55 (Council District 1). However, the Board of Elections records that I saw had *both* sides – the even side as well as the odd – of *all* of Fourth Street in Election District 56 (Council District 4). (See Exhibit N to Appendix to this motion). I thought it was appropriate to call this situation to the Board of Elections attention in order to get the records right. My handwritten notes taken as I was doing the comparison (see Exhibit O to Appendix to this motion) show that I wanted to correct Fourth Street "27 – 81 Odd ED 55."

21.    On October 9, 2004, I sent the Board of Elections a fax with changes I thought the the Board should make. A copy of that fax is annexed to the Appendix to this motion as Exhibit C. In that fax, I regrettably made an error. The fax stated: "Fourth Street 27-81 B ED 55", which indicated that *both* sides of Fourth Street should be in District 55, rather than just the odd side. Instead of typing "O" for Odd, I typed "B" for "Both". This meant that persons in the affected area of Fourth Street would be voting in Council District 1, not Council District 4.

22.    I apologize for making this mistake. I did not realize that I had made a mistake at the time. I made the mistake in attempting to correct an earlier mistake that the Board of Elections had made. I was attempting in good faith to avoid errors in the conduct of the election and it was not my intention to disenfranchise anyone or cause anyone to vote in an improper district.

23.    When I made this error, I did not know the names, party affiliations or political viewpoints of the persons who would be affected by it. I did not know the genders or racial or

5

ethnic backgrounds of the persons affected. I did not know, nor did I have any means of knowing, what, if any, impact, the change would have in the outcome of the Election. I certainly did not intend to purposefully and improperly alter the outcome of an election or to cause any violation of any one's rights.

24.     I published an updated version of the Street Guide in October, 2003 (the "General Election Street Guide"), a copy of which is annexed to the Appendix to this motion as Exhibit D. This version, like its Primary Election Street Guide, contained the correct placement of the addresses between 27-81 Fourth Street (see page 13).

25.     The County Board of Elections barred distribution of the Street Guide, informing me that the Board supplies the directories and it was unnecessary for the City Clerk to supply one. A copy of their letter to me, dated October 24, 2003, is annexed to the Appendix to this motion as Exhibit E.

26.     On Election Day, I received telephone calls from Dr. Maria Kantha, an Hispanic activist who was active in the campaign of Roberto Lopez, a candidate for City Council in the Fourth Council District. I also received a telephone call from Mr. Lopez' campaign manager, Manny Chagas. Dr. Kantha and Mr. Chagas were very, very upset that persons in the affected Fourth Street area had gone to polls to vote for Lopez and found out that their election district was in the wrong Council district.

27.     In responding to these telephone calls, I reviewed the situation and realized that I had made an error in the fax that I had sent in October. I also realized that the Lopez campaign believed that my error had the effect of depriving Lopez of votes. It was certainly not my intent to undertake any action that would deprive either candidates of any votes or to prevent any voters from voting for candidates of their choice.

6

28.     During of the course of this litigation, I learned that Douglas Colety, the Chair of

the New Rochelle Republican City Committee, caused an investigation to be made to verify the

boundaries of all election districts in the City and to determine the accuracy of the assignment of

all voters in the City of New Rochelle to election districts. It is my understanding that Mr. Colety

testified that at least five people, and in addition two attorneys, took 300 to 500 hours to do this

work, consisting of hours of driving around the City and hundreds of hours of research at the

Board of Elections. I understand that Mr. Colety testified that it took him approximately 30 days

to do this work. A copy of Mr. Colety's deposition is annexed to the Appendix to this motion as

Exhibit F.

29.     As City Clerk, I simply did not have the resources to undertake such an

investigation. Neither my limited staff nor myself could spare the time to drive around the City

and I had no ability to have any others do so, whether City engineers, police officers, or any

other City employees. I likewise did not have the staff to pore over the voter registration list of

every voter in the City.

30.     It is my understanding that Mr. Colety's investigation turned up the possibility

that 23 voters, residing at even numbered addresses between 290 to 316 on Lockwood Avenue

were erroneously listed in Election District 56 (and therefore Council District 4), rather than

Election District 55 (and Council District 1).

31.     The City Clerk's Street Guide (both the original version and the corrected

version) had the even numbers between 290 and 316 Lockwood Avenue in Election District 55.

See Exhibits B and D hereto, both at page 22.

32.     In reviewing this issue, I discovered that, on July 17, 2003, I sent the Board of

Elections an email correcting 210 to 280 Lockwood and 287 to 317 Lockwood to be in Election

District 56. Apparently, in making that change, the Board of Elections also placed 290 to 316 Lockwood in Election District 56. I did not make or cause any error; the Street Guides that I prepared were correct as regards the Lockwood Avenue locations.

33.     It is my understanding that, as a result of his driving around the City, Colety identified 1 voter residing at 89 Van Guilder who, in his view, should have been in Election District 62 (Council District 3), rather than Election District 54 (Council District 4). This property is located on the corner of Van Guilder and Warren and has entrances on both streets. Warren Street at that location is located in Election District 54 (Council District 4).

34.     Based on the information given to me by Mr. Mehta, I had informed the Board of Elections, and reflected in the Street Guides, that the residences on Van Guilder were located in Election District 54 (Council District 4). I did not know that there was a residence on the corner of Van Guilder and Warren that should have been on Election District 62 (Council District 3). As explained in the accompanying affidavit of Arnold I. Klugman, all of the residences that were formerly on the same block at 89 Van Guilder had been demolished and their sites used as a parking lot for Sound Shore Medical Center. I had no means to discover that there was one remaining residence, which, as Mr. Klugman describes, the City engineering staff may have overlooked. The voter in question never called it to my attention.

35.     I understand that Mr. Colety has reported that there was a family of four persons, residing at 161 Church Street, who were placed in Election District 20 (Council District 1) rather than Election District 26 (Council District 2). When I learned of this claim, I checked the Street Guides, which show that, according to the City's records, while the odd numbered sections of Church Street up to and including 161 Church ("Odd 43-161 incl") were placed in

8

Election District 20, odd numbered sections beginning with 163 Church ("163-207 incl") were placed in Election District 26, which is in Council District 2.

36.     Whether 161 Church Street should have been placed in District 20 or District 26 was not decided by me. The ranges on Church Street, like all other ranges, were given me by the City's engineer, Mr. Mehta, in connection with the original preparation of the Street Guide in May, 2003. Both the Primary and General Election Street Guides (Exhibits B and D, at page 6) contain the exact same information.

37.     There is no fax or email or other record from me seeking to change the election district of 161 Church Street or even to place 161 Church Street in a specific election district. I had no knowledge of who resides at 161 Church Street, whether they were registered to vote, or what their party affiliation is, or what their political viewpoints are.

38.     As the Court will observe, the Street Guides contain over 40 pages of street listings, with numerous streets having portions in different election districts. I did not personally examine the maps to verify which street numbers were in which election districts. I relied completely and entirely on Mr. Mehta.

39.     I have also learned that there is an issue concerning two or three incorrect addresses on Pelham Road, including an apartment building. On May 28, 2003, I sent the County Board an email which, among other things, stated that 450 to 600 Pelham Road should be in Election District 18 (Council District 2). However, on June 2, 2003, I sent another email advising the County Board that the even addresses between 570 to 758 Pelham Road should be in Election District 71 (Council District 1).

40.     These emails were based strictly upon information that I received from Mr. Mehta. I asked him to verify the Pelham Road addresses in late May, leading to the May 28

email, and after I received a question, I asked him to check it again. I do not recall who raised the initial question and why the same approximate area was double checked. However, I did not personally review the map nor did I have any knowledge of the names of the voters involved, their political party affiliations, their ethnicities, or their political viewpoints. Nor would have I any way to know in May and June, 2003, which candidates would be successful in the two District 2 primaries and how the persons in the affected area would vote, if indeed, they would vote at all.

41.     In sum, I did not know prior to Election Day there were errors in the Street Guides and Board of Elections voter registration lists. I did my best prior to Election Day to correct any errors that came to my attention. I regret any mistakes that I made. However, I did nothing to deliberately disenfranchise any one or to prejudice any one's right to vote or participate in the 2003 elections. I did not know – and had no way of knowing – that how any errors that I may have made could impact upon the results of the elections. I did not know the names of the affected voters. Any errors were reflected in publicly available documents, such as the published Street Guides and walking lists, and I would have done my best to correct any errors brought to my attention, just as I attempted, in good faith, to correct those errors that I did know about.

42.     I can state that, in my experience over six years as City Clerk, unfortunate events do happen on election days. Voting machines malfunction, election inspectors fail to spot names in the poll books (even though the names are there), election inspectors fail to tell people of their right to an affidavit or emergency ballot, among others. Voters make mistakes, as well, such as reporting to the wrong polling place, forgetting to vote for every office, failing to properly punch a punch card ballot, or punching a ballot and then trying to change the vote by punching the

10

ballot again. However, I have never seen, much less participated in, any deliberate effort to improperly influence the outcome of an election or to deny anyone the right to vote.

WHEREFORE, I respectfully submit that Defendants' motion for summary judgment should be granted.

DOROTHY ALLEN

Sworn to before me this
___ day of July, 2004

Notary Public

**ALAN D. SCHEINKMAN**
Notary Public, State of New York
No. 4941526
Qualified in Westchester County
Commission Expires August 15, 200 6

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSEMARY G. McLAUGHLIN, ALBERT A.
TARANTINO, TERENCE McCUE,  DOREEN E.
BERTONE, ROBERT R. LEBENSOLD, JACOB
VINCI, ROBERT W. HALL, JR., MICHELINA
WRIGHT, TIFFINAY NARDOZI, MICHELE
TARINTINO, MADELINE PELLIGRINO,
CHARLES McLAUGHLIN,

       Plaintiffs,

    -against-

DOROTHY ALLEN, in her capacity as CITY CLERK
of the City of New Rochelle, CITY OF NEW
ROCHELLE, THE WESTCHESTER COUNTY
BOARD OF ELECTIONS,  Carolee Sunderland
and Reginald Lafayette, Commissioners Constituting
the Board, ROBERT LOPEZ, JOHN M. QUINLAN,
MICHAEL BROWN, MARGARET A. GODFREY,
candidates,

       Defendants.
-----------------------------------------------------------------X

03 Civ. 9886 (CLB)


**AFFIDAVIT OF**
**ARNOLD I. KLUGMAN**




Filed Electronically

STATE OF NEW YORK   )
          ss.:
COUNTY OF WESTCHESTER  )

   ARNOLD I. KLUGMAN, being duly sworn, deposes and says:

   1.  I am a citizen and voter in the City of Rochelle, residing at 28 Trenor Drive in the

City. I am the Chairman of the New Rochelle City Democratic Committee. I have been actively

involved in politics in the City of New Rochelle since 1972 and have served as Chairman of the

New Rochelle City Democratic Committee since 1979.  In my capacity as the Chairman of the

New Rochelle City Democratic Committee, I serve as a member of the Executive Committee of

the Westchester County Democratic Committee.

2.      The New Rochelle City Council is comprised of the Mayor, elected at large, and six Council Members, each elected from one City Council district. In 2003, all seven Council positions were subject to election. In addition, the City Council districts had to be redrawn in light of the 2000 census.

3.      Election districts are the basic political subdivision for purposes of voter registration and voting. The City is apportioned into in various County legislative, State Assembly and State Senate Districts, as well as City Council districts.  In 2003, the City Council decided to reduce the number of election districts as a means of saving money and providing an adequate number of operable voting machines. Municipalities, including New Rochelle, are using old voting machines, while the State decides on how to replace them. Obtaining parts for outdated machines is difficult, leading to cannibalization of some to keep others running.

4.      I know from personal experience that the County Board of Elections keeps the official voter registration lists and that those lists are publicly available. The lists are used by candidates during petition circulation times in order to identify political party members who are eligible to sign designating petitions. Such lists are available for each election district.

5.      The Board of Elections lists can be difficult to read by election inspectors who are not computer literate. In the past, misreadings by election inspectors working off the Board lists have resulted in their sending voters to the wrong polling locations. In New Rochelle, the City Clerk has prepared a "Street Guide" showing which streets (and portions of streets, as reflected by street address numbers) are in which election districts. The Street Guide shows a listing of streets (or portions thereof) and the Election, State Senate, State Assembly, County Legislative, and Congressional Districts they are located in.

2

6.    The redistricting plan which was to govern the 2003 New Rochelle City Council elections was adopted by the City Council on April 29, 2003. With the period for obtaining petition signatures commencing on June 3, 2003, and the time to file them set for between July 7 and 10, 2003, I know from my own contacts with the City Clerk, Dorothy Allen, in that period that she was attempting to update the Street Guide expeditiously.

7.    At some time prior to the September 2003 primary election, I obtained a published 2003 Street Guide from the City Clerk's office. In reviewing the Street Guide, I saw what appeared to me to be various errors in the assignment of particular blocks of streets to election districts.

8.    I had given district leaders the Board of Elections lists for their election districts. In sorting out the sheets for distribution, I saw discrepancies which I checked against the Street Guide. When I spotted these discrepancies, I would call the City Clerk and bring them to her attention.

9.    In New Rochelle, most voters cast their ballots on voting machines. There are various types of other ballots that do not involve the use of the standard voting machine. For example, persons unable to appear at the polls may cast absentee ballots; voters who are not listed in the election district voter registration list may cast affidavit ballots; voters who are present when a voting machine breaks down may cast emergency ballots; military personnel may cast military ballots.

10.    In Westchester County, the Board of Elections has long used a punch-card machine, approved by the State Board, to count all non-voting machine ballots. I have been an active observer of numerous canvasses and recanvasses, including canvassing of punch-card ballots at the Board of Elections, For as long as I have been involved in politics, the Board of

3

Elections has never conducted a manual or hand count of non-voting machine ballots. They have always used a punch card machine read out, sometimes running the cards through multiple times in order to verify the results. In fact, when the issue of hand counts has arisen, the Commissioners (both the present Commissioners and their predecessors) have invariably, and jointly, refused to conduct hand counts of punch ballots.

11.     In September, 2003, there were four contested primary elections for City Council in September 2003. In District 2, there was a contested Republican primary election between Albert A. Tarantino and Margaret A. Godfrey, as well as a contested Democratic primary between John M. Quinlan and Michael Brown. In District 4, there was a contested Republican primary between Rosemary G. McLaughlin and Sebastian Bulfamonte. In District 3, there was a contested Democratic primary between Bea Brown and James Stowe.

12.     The September 2003 primary was not marked with any unusual events. However, that does not mean that it was perfect or that any election is perfect. Every election is marked with some voter confusion, as evidenced by voters confused about their polling place or party enrollment. Voters who consider themselves "independent" are sometimes confused as to whether they are enrolled in the "Independence" Party. Moreover, voters may be given misinformation by election inspectors, leading to disenfranchisement. For example, election inspectors may not be able to find a voter in a poll book (even though the voter is in the book) and then fail to tell the voter about the use of affidavit ballots. Voters may be leave without voting if a machine breaks down, and may not be told of the right to an emergency ballot. Election inspectors may make mistakes in completing affidavit ballot envelopes.

13.     In District 2, Tarantino prevailed over Godfrey for the Republican nomination for Council, though Godfrey would be on the November ballot on an independent party line.

4

Quinlan defeated Brown for the Democratic nomination, though Brown would be on the Working Family line in November. In District 4, McLaughlin won the Republican nomination over Bulfamonte (who would not be on the November ballot). In District 3, Stowe defeated Brown.

14.    It is my practice on primary and election days to visit the various polling places in the City of New Rochelle. On Election Day 2003, every polling place that I visited, including the polling places at Columbus School, had sample ballots specific to the respective election districts which were conspicuously at each machine. Thus, voters could physically observe, prior to entering voting booths, the ballot that they would be voting once in the booth.

15.    In addition, New York law gives candidates the right to inspect sample ballots prior to the election and the right to inspect the voting machines prior to the election to make sure the ballots are correct.

16.    Late in the afternoon on Election Day, I received a telephone call from Elizabeth Vega, a prospective Lopez voter who told me that she had gone to the polls to vote for Lopez but had ended up voting for Sue Tozzi, the Democratic candidate in Council District 1, because Lopez was not on the ballot in her polling place. I was at Lopez' house at the time and I asked Manny Chagas, Lopez' campaign manager, to notify the City Clerk. Because Dr. Maria Kantha, an Hispanic activist and Lopez supporter, was with us and she had the computer disc with the Board of Elections voter registration list on her personal laptop, she was able to check the area on Fourth Street where Ms. Vega lived. We were thus able to identify others in the same area who might have the same problem.

17.    Dr. Kantha, Mr. Chagas and I personally called all of the registered Democrats and persons with Hispanic surnames in that area to let them know there was a problem and to

advise them of their right to use an affidavit ballot. I also went to the polling place in question, Columbus School, found that the two districts in question were at adjoining tables, and alerted the election inspectors to the discrepancy and advised them that some people may be requesting affidavit ballots.

18.     Insofar as this litigation is concerned, the 2003 General Election produced close contests in Districts 2 and 4. In District 2, Quinlan narrowly defeated Tarantino, Brown and Godfrey. In District 4, Lopez defeated McLaughlin in a close contest. Ultimately, the Board of Elections reported that Quinlan finished 8 votes ahead of Tarantino and Lopez outpolled McLaughlin by 18 votes.

19.     With respect to the error on Fourth Street which came to light on Election Day, I knew that the area in question was an area where Lopez could anticipate receiving votes, due to Democratic enrollment and the presence of Hispanic citizens. Lopez was the first major Hispanic candidate in New Rochelle and was anticipating support from Hispanic citizens.

20.     I have reviewed the materials produced in discovery by Plaintiffs and understand that, as shown by Exhibit L to the appendix to this motion, Douglas Colety, the Republican City Chair, has identified 36 voters who, as the result of the error by the City Clerk in informing the County Board of Elections that both sides of a small section of Fourth Street were in Election District 55, were erroneously listed as voting in Council District 1, rather than Council District 4. Of these 36 people, Colety's research showed that only 14 actually voted, of which 3 voters cast their votes by affidavit ballot in the correct election district. One person voted an absentee ballot (and thus was in a position to realize the error prior to Election Day and voted anyway).[1]

---

[1] Absentee ballots are provided prior to Election Day, as the application must be made prior to Election Day, and the ballot itself must be mailed by not later than Election Day.

21.     I have reviewed the materials submitted by Mr. Colety and, as he acknowledged in his deposition (which I attended), most of the 36 voters were Democrats. Approximately 10 had Hispanic-appearing surnames, including Ms. Vega, an enrolled Democrat and a known Lopez supporter.

22.     I understand that an issue has been raised concerning a registered voter who is registered to vote at 89 Van Guilder. I understand that the City engineering department caused all of the houses on Van Guilder to be placed in Election District 54 (Council District 4). What they did not realize, and I discovered from a physical inspection of the site, is that the property in question is the only remaining building on a block that is used as a parking lot for Sound Shore Medical Center. The entrance to the house is on Warren Street which at that location is located in Election District 62 (Council District 3). It appears that the City engineering department overlooked that there was one remaining house on the portion of Van Guilder that was in Election District 62, a fact that would not be observable without a physical inspection.

23.     I understand there is the possibility, as shown by Exhibit J to the appendix, that there is possibility that 23 voters, residing at even numbered addresses between 290 to 316 on Lockwood Avenue were erroneously listed in Election District 56 (and therefore Council District 4), rather than Election District 55 (and Council District 1). Of the 23 voters impacted, only 4 actually voted. I have examined the documents and have ascertained that, of the 23 registered voters, 6 were Democrats and 6 were Republicans. Of the 4 that voted, 3 were Democrats and 1 was a Republican.

24.     I understand that an issue has been raised that a family of 4 voters residing at 161 Church Street should have been placed in Election District 26 (Council District 2) rather than Election 20 (Council District 1). Review of the documents produced by Plaintiffs (Exhibit I to

7

the Appendix) shows that one of the 4 persons in question, Winifred T. Mullin, voted by absentee ballot. Since absentee ballots must be mailed on or before Election Day, and are distributed prior to Election Day, Ms. Mullen knew or should have known prior to Election Day of any error in the ballot but took no action in relation thereto, other than to vote the ballot she given.

25.    I have examined the documents submitted by Plaintiffs showing that 79 voters residing at 582 to 600 Pelham Road were identified as being in Election District 71 (Council District 1) rather than Election District 18 (Council District 2). Of the 79 voters, 33 actually voted, including 1 vote by absentee ballot. Of the 79 registered voters, 34 were enrolled Democrats and 19 were enrolled Republicans. Of the 34 actual voters, 15 were Democrats and 10 were Republicans.

26.    Despite my own review of the various records, I was unaware prior to Election Day 2003 that the aforementioned errors had been made. When I was made aware of the Fourth Street error, I acted as promptly as I could to remedy it as best as I could.

27.    Charles McLaughlin, a Plaintiff herein, is the husband of Plaintiff Rosemary McLaughlin. Plaintiff Tiffinay Nardozi is a step-daughter of Plaintiff Albert Tarantino. I believe that Plaintiff Doreen Bertone is also a relative of Plaintiff Albert Tarantino.

WHEREFORE, I respectfully submit that Defendants' motion for summary judgment should be granted.

ARNOLD I. KLUGMAN

Sworn to before me this
9 th day of July, 2004

Notary Public

ALAN D. SCHEINKMAN
Notary Public, State of New York
No. 4941526
Qualified in Westchester County
Commission Expires August 16, 200

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

ROSEMARY G. McLAUGHLIN, ALBERT A.
TARANTINO, TERENCE McCUE,  DOREEN E.
BERTONE, ROBERT R. LEBENSOLD, JACOB
VINCI, ROBERT W. HALL, JR., MICHELINA
WRIGHT, TIFFINAY NARDOZI, MICHELE
TARINTINO, MADELINE PELLIGRINO,
CHARLES McLAUGHLIN,

                                        Plaintiffs,

                    -against-

DOROTHY ALLEN, in her capacity as CITY CLERK
of the City of New Rochelle, CITY OF NEW
ROCHELLE, THE WESTCHESTER COUNTY
BOARD OF ELECTIONS,  Carolee Sunderland
and Reginald Lafayette, Commissioners Constituting
the Board, ROBERT LOPEZ, JOHN M. QUINLAN,
MICHAEL BROWN, MARGARET A. GODFREY,
candidates,

                                        Defendants.
----------------------------------------------------------------X

03 Civ. 9886 (CLB)

**AFFIDAVIT OF
ALAN D. SCHEINKMAN**

Filed Electronically

STATE OF NEW YORK          )
                                            ss.:
COUNTY OF WESTCHESTER  )

          ALAN D. SCHEINKMAN, deposes and says:

          1.     I am an attorney duly admitted to practice before this Court and am a member of

DelBello, Donnellan, Weingarten, Tartaglia, Wise & Wiederkehr, LLP, attorneys for Defendants

Dorothy Allen, as City Clerk of the City of New Rochelle, and the City of New Rochelle. I

respectfully submit this affidavit in support of Defendants' motion for summary judgment. I have

personal knowledge of the facts set forth herein.

1

2.      While this motion is made on behalf of the City Clerk and the City, Robert D. Goodstein, Esq., of Goodstein & West, attorneys for Defendants John M. Quinlan and Roberto Lopez, has authorized me to represent to the Court that he and his clients join in this motion.

3.      Annexed to the Appendix to this motion as Exhibit F thereto is a true and complete copy of the transcript of the deposition of Douglas Colety, taken in this action on June 30, 2004.

4.      Annexed to the Appendix to this motion as Exhibit G is a true and complete copy of the Decision and Order of the Supreme Court, Westchester County, dated December 10, 2003, issued by Hon. Francis A. Nicolai in *Matter of Tarantino, et. ano. v. Westchester County Board of Elections, et. al.*, Index No. 19259/2003.

5.      Annexed to the Appendix to this motion as Exhibit H is a true and complete copy of the Decision and Order of the Appellate Division, Second Department, dated July 8, 2004, issued in *Matter of Tarantino, et. ano. v. Westchester County Board of Elections, et. al.* (App. Div. 2004-03129).

6.      Annexed to the Appendix to this motion as Exhibit I are true and complete copies of the exhibits to the deposition of Douglas Colety marked as Colety 2 through 5.

7.      Annexed to the Appendix to this motion as Exhibit J are true and complete copies of the exhibits to the deposition of Rosemary McLaughlin marked as McLaughlin 2 through 6.

8.      Annexed to the Appendix to this motion as Exhibit K is a true and complete copy of the exhibit to the deposition of Douglas Colety marked as Colety 6. It should be noted that Plaintiffs produced similar documents for 78 other voters with addresses of 582 or 600 Pelham Road in New Rochelle.

2

9.      Annexed to the Appendix to this motion as Exhibit L is a true and complete copy of a document produced in discovery by Plaintiffs, consisting of a spreadsheet identifying the names of certain voters with addresses on Fourth Street in the City of New Rochelle who, it is asserted therein, were incorrectly placed in Election District 55 (Council District 1) rather than in Election District 56 (Council District 4). This document is the first page of the document market at the deposition of Douglas Colety, taken June 30, 2004 as Colety 7. It should be noted that Plaintiffs produced copies of poll book entries and voter registration lists which accompanied the spreadsheet.

10.      Annexed to the Appendix to this motion as Exhibit M is a true copy of the transcript of the deposition of Albert Tarantino, taken June 30, 2004.

11.      Annexed to the Appendix to this motion as Exhibit N is a true copy of a certification by the Westchester County Board of Elections of the election results in the City of New Rochelle in the year 2003.

12.      Annexed to the Appendix to this motion as Exhibit P is a true copy of the deposition of John B. Clemente, taken February 27, 2004.

13.      Annexed to the Appendix to this motion as Exhibit Q is a true copy of the deposition of Rashmikant Mehta, taken February 27, 2004.

14.      Annexed hereto as Exhibit R is a true copy of the Order to Show Cause issued November 24, 2003 and Petition in *Matter of Tarantino, et. ano. v. Westchester County Board of Elections, et. al.*, Index No. 19259/2003.

15.      Annexed hereto as Exhibit S is a true copy of Petitioners' Reply Affirmation, dated December 3, 2003 in *Matter of Tarantino, et. ano. v. Westchester County Board of Elections, et. al.*, Index No. 19259/2003.

3

WHEREFORE, I respectfully submit that Defendants' motion for summary judgment should be granted.

ALAN D. SCHEINKMAN

Sworn to before me this
9th day of July, 2004

Notary Public

FRANCES M. MAGRINO
Notary Public, State of New York
No. 4993842
Qualified In Westchester County
Commission Expires March 23, 2006

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROSEMARY G. MCLAUGHLIN, ALBERT A.
TARANTINO, TERENCE MCCUE, DOREEN E.
BERTONE, ROBERT R. LEBENSOLD, JACOB VINCI,      Docket No.  03CIV9886(CLB)
ROBERT W. HALL, JR., MICHELINA WRIGHT,
TIFFINAY NARDOZI, MICHELE TARINTINO,
MADEINE PELLIGRINO, CHARLES MCLAUGHLIN,
                                    Plaintiffs,

        -against-                              .

DOROTHY ALLEN, in her capacity as CITY CLERK of
the City of New Rochelle, CITY OF NEW ROCHELLE,
THE WESTCHESTER COUNTY BOARD OF
ELECTIONS, Carolee Sunderland and Reginald Lafayette,
Commissioners Constituting the Board, ROBERT LOPEZ,
JOHN M. QUINLAN, MICHAEL BROWN, MARGARET
A. GODFREY, candidates,
                                    Defendants.
-------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

**FRANCES M. MAGRINO,** hereby certifies as follows:

1.      I am employed by the law firm of DelBello Donnellan Weingarten Tartaglia Wise
& Wiederkehr, LLP, I am over 18 years of age and not a party to the above-entitled action. My
business address is One North Lexington Avenue, White Plains, New York  10601.

2.      On July 9, 2004 I served a copy of the annexed NOTICE OF MOTION WITH
AFFIDAVITS and MEMORANDUM OF LAW IN SPPORT OF MOTION BY DEFENDANTS
DOROTHY ALLEN AND CITY OF NEW ROCHELLE FOR SUMMARY JUDGMENT, by
depositing the same with an overnight delivery service in a wrapper properly addressed.  Said
delivery was made prior to the latest time designated by the overnight delivery service for overnight
delivery.  The address and delivery service is indicated below:

John Ciampoli, Esq.
99 Washington Avenue, Suite 702
Albany, NY  12210

**Via Federal Express**
**Tracking No.: 7920 4091 6328**

Charlene M. Indelicato, Esq.
County Attorney for County of Westchester
148 Martine Avenue
White Plains, NY  10601
Attn:  Matthew I. Gallagher, Esq.

**Via Federal Express**
**Tracking No.: 7902 0317 2747**

Goodstein & West
56 Harrison Street, Suite 402
New Rochelle, NY 10801
Attn: Robert D. Goodstein, Esq.

**Via Federal Express**
**Tracking No.: 7902 0318 2704**

Lewis & Fiore
225 Broadway, Suite 3300
New York, NY 10007
Attn: David L. Lewis, Esq.

**Via Federal Express**
**Tracking No.: 7906 9520 3914**

3.     I declare under the penalties of perjury that the foregoing is true and correct and this certificate was executed in White Plains, New York.

FRANCES M. MAGRINO

Sworn to before me this
9th day of July, 2004.

Notary Public

**DIANA BARREIRO**
**Notary** Public, State of New **York**
**No. 01BA6068588**
**Qualified in Westchester County**
**Commission Expires January 7, 20** _06_

1104594